LAWYERS FOR CLEAN WATER, INC.
Daniel Cooper (Bar No. 153576)
Email: daniel@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

JS-6

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER
*Plaintiff's Additional Counsel Listed On Next Page*

LAW OFFICES OF THOMAS M. BRUEN, P.C.
Thomas M. Bruen (Bar No. 63324)
Email: tbruen@tbsglaw.com
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596
Telephone:   (925) 295-3131
Facsimile:   (925) 295-3132
*Attorney for Defendants*
REPUBLIC SERVICES, INC.; CONSOLIDATED DISPOSAL SERVICE, LLC;
REPUBLIC SERVICES OF CALIFORNIA II, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation,<br><br>                    Plaintiff,<br><br>        vs.<br><br>REPUBLIC SERVICES, INC., et al<br>                    Defendants. | Civil Case No.<br><br>CV14-00925-DDP (PLAx)<br><br>**ORDER RE: CONSENT DECREE AND JUDGMENT**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

LOS ANGELES WATERKEEPER
Tatiana Gaur (Bar No. 246227)
Email: tgaur@lawaterkeeper.org
120 Broadway, Suite 105
Santa Monica, California 90401
Telephone: (310) 394-6162, ext. 102
Facsimile: (310) 394-6178

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Los Angeles Waterkeeper ("Plaintiff" or "Waterkeeper") and Defendants Republic Services, Inc., Consolidated Disposal Service, LLC, and Republic Services of California II, LLC (collectively "Republic" or "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Waterkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS,** Waterkeeper is dedicated to the preservation, protection, and defense of the rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Consolidated Disposal Service, LLC, doing business as "American Waste Transfer" ("Consolidated"), is the owner and operator of a waste processing and transfer facility located at 1449 West Rosecrans Avenue, Gardena, California 90249, hereinafter referred to by the Settling Parties as the "American Waste Facility";

**WHEREAS**, Consolidated Disposal Service, LLC and Republic Services of California II, LLC are subsidiaries of Republic Services, Inc.;

**WHEREAS**, Waterkeeper has approximately 3,000 members who live and/or recreate in and around the Dominguez Channel watershed and Los Angeles area waterbodies receiving discharges from the American Waste Facility, including the Dominguez Channel, Dominguez Channel Estuary, Los Angeles Harbor, Los Angeles/Long Beach Harbor, San Pedro Bay, Cabrillo Beach, and the Pacific Ocean;

**WHEREAS,** discharges from the American Waste Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit") and the Federal

Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on December 4, 2013, Waterkeeper sent Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Regional Water Quality Control Board ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the American Waste Facility;

**WHEREAS**, on February 6, 2014, Waterkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Case No. CV14-925-DDP (PLAx)), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the American Waste Facility ("Complaint");

**WHEREAS**, Waterkeeper alleges Defendants to be in violation of the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act with respect to the American Waste Facility;

**WHEREAS**, Defendants deny all allegations in the Notice Letter and Complaint relating to the American Waste Facility;

**WHEREAS**, Waterkeeper and Defendants have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2.  Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the American Waste Facility is located within this District;

3.  The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4.  Plaintiff has standing to bring this action;

5.  The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.  **OBJECTIVES**

6.  It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq*., and to resolve those issues alleged by Waterkeeper in its Complaint. In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree and to comply with the requirements of the Storm Water Permit and all applicable provisions of the Clean Water Act. Specifically, Receiving Water Limitation C(2) in the Storm Water Permit requires that discharges from the American Waste Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Effluent Limitation B(3) of the Storm Water Permit requires that Best Management Practices ("BMPs") at the American Waste Facility be developed and implemented to achieve Best Available Technology Economically Achievable ("BAT") for toxic and non-conventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants (collectively "BAT/BCT"). Defendants shall develop and implement BMPs necessary to comply with the Storm Water Permit requirement to achieve compliance with      BAT/BCT standards and with the

applicable water quality standards. BMPs must be developed and implemented to prevent discharges and/or to reduce contamination in storm water from the American Waste Facility in compliance with this Consent Decree.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

7.     Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendants if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time. If the parties are unable to reach agreement to modify this Consent Decree so as to resolve the issues raised by the Federal Agencies, and this Consent Decree as so modified is not approved by the Federal Agencies, this Consent Decree shall be of no force and effect. Furthermore, if this Consent Decree is not approved by the Court, this Consent Decree shall be of no further force and effect.

8.     The term "Effective Date" as used in this Consent Decree shall mean the day this Consent Decree is signed and entered by a United States District Court Judge.

9.     This Consent Decree shall terminate as to the American Waste Facility on June 30, 2017 (the "Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Defendants' compliance with this Consent Decree. In the absence of such an ongoing, unresolved dispute, this Consent Decree shall terminate on the Termination Date. Should there be such a dispute, Waterkeeper shall file a Notice of Dispute with the Court prior to the Termination Date, which shall identify the issue in dispute. The filing of such Notice of Dispute by Waterkeeper shall extend the Termination Date until the Court determines the dispute has been resolved and thereupon dismisses the case or, alternatively, if          Republic Services, Inc., Waterkeeper, and

1    Consolidated file a stipulation for dismissal.

2        10.    Waterkeeper may conduct an inspection of the American Waste Facility

3    forty-five (45) days prior to the Termination Date or, at Waterkeeper's option, following

4    the filing of the Notice of Dispute. Defendant Consolidated shall work with Waterkeeper

5    to promptly schedule and accommodate the inspection, if requested. The inspection shall

6    be conducted according to the rules applicable to annual site inspections in paragraphs 63

7    - 66 below.

8    **III.    COMMITMENTS OF THE SETTLING PARTIES**

9        **A.    Definitions**

10       11.    For purposes of this Consent Decree, "Cattle Grid" means a grid composed

11   of parallel metal bars that is set at ground level in an exit way with a concrete collection

12   basin beneath it, and is similar to the grids used to prevent cattle from crossing a roadway

13   while allowing the passage of vehicles.

14       12.    For purposes of this Consent Decree, "Diesel Dispenser Area" means the

15   fueling island located in Drainage Area 1 near Halldale Avenue, as indicated on the

16   American Waste Facility Site Map, which is attached hereto as Exhibit A.

17       13.    For purposes of this Consent Decree, "Drainage Area 1" means the area of

18   the American Waste Facility bordered by 141st Street on the north, the maintenance

19   building and edge of the American Waste Facility property on the east, Halldale Avenue

20   on the west, and Drainage Area 2 on the south, as outlined in the American Waste

21   Facility Site Map, which is attached hereto as Exhibit A.

22       14.    For purposes of this Consent Decree, "Drainage Area 2" means the

23   southwestern area of the American Waste Facility, bordered by Halldale Avenue on the

24   west and Rosecrans Avenue on the south, and encompassing the western portion of the

25   Transfer Station Building, as outlined in the American Waste Facility Site Map, which is

26   attached hereto as Exhibit A.

27       15.    For purposes of this Consent Decree, "Drainage Area 3" means the

28   southeastern area of the American Waste        Facility, bordered by Brighton Avenue on

the east and Rosecrans Avenue on the south, and encompassing the eastern portion of the Transfer Station Building, as outlined in the American Waste Facility Site Map, which is attached hereto as Exhibit A.

16. For purposes of this Consent Decree, "Filtrexx EnviroSoxx" means the Filtrexx® EnviroSoxx® sediment control devices sold by Filtrexx Land Improvement Systems, See http://www.filtrexx.com/envirosoxx/.

17. For purposes of this Consent Decree, "Grattix box(es)" means the "Grattix Rain Garden in a Box" developed by Port of Vancouver USA. See http://www.portvanusa.com/assets/Grattix-how-to-flyer.pdf.

18. For purposes of this Consent Decree, "Green Waste/Recyclable Tipping Area" means the tipping area for green waste and commingled recyclables, which is located next to the push wall in the southern portion of Drainage Area 1, as indicated on the American Waste Facility Site Map, which is attached hereto as Exhibit A.

19. For purposes of this Consent Decree, "Maintenance Building" means the building located in Drainage Area 1 near 141st Street in the northeastern corner of the American Waste Facility, as indicated on the American Waste Facility Site Map, which is attached hereto as Exhibit A.

20. For purposes of this Consent Decree, "Speed Bump Berms" means impervious berms composed of a low-raised ridge that are similar in shape to the speed bumps used in roads to reduce vehicles' speed.

21. For purposes of this Consent Decree, "Transfer Station Building" means the building located in Drainage Area 2 and Drainage Area 3 in the southern portion of the American Waste Facility, as labeled on the American Waste Facility Site Map, which is attached hereto as Exhibit A.

**B.    Non-storm Water**

22. To ensure there are no unauthorized non-stormwater discharges, any non-storm water discharges from the American Waste Facility not authorized by the Storm Water Permit or other NPDES permit shall    be considered a breach of this Consent

Decree.

**C.    Storm Water Pollution Reduction Measures**

23.    The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage, through infiltration, treatment, and/or diversion, 1.77 inches of rain falling in a 24-hour period ("95% Design Storm"). The Settling Parties agree that this number represents the storm water from all storm events with total precipitation that is less than or equal to ninety-five (95) percent of all 24-hour storms, based on 1984-2014 historical rainfall measured at the Los Angeles 96th and Central rain gauge. The structural storm water pollution control measures agreed to under this Consent Decree shall be in place and operable throughout the entire year.

24.    All BMPs listed in this section shall ensure that no storm water shall be discharged from the American Waste Facility, the boundaries of which are outlined on the American Waste Facility Site Map attached hereto as Exhibit A, up to the 95% Design Storm.

**a.  Infiltration Basins**

25.    In Drainage Area 1, Defendant Consolidated shall install the proposed infiltration basin next to the Green Waste/Recyclable Tipping Area, as described in Exhibit B, no later than September 30, 2014.

26.    In Drainage Area 2, Defendant Consolidated shall install the proposed infiltration basin next to the Transfer Station Building, as described in Exhibit B, no later than September 30, 2014.

27.    In Drainage Area 3, Defendant Consolidated shall install the proposed infiltration basin behind the Transfer Station Building, as described in Exhibit B, no later than September 30, 2014.

28.    For Drainage Areas 1, 2, and 3, Defendant Consolidated shall develop a plan by September 30, 2014 to implement the infiltration basin sampling requirements in paragraphs 43 – 49 of this Consent Decree.

**b.  Trench Drains**

29.     Defendant Consolidated shall install the trench drains described in Exhibit B across the American Waste Facility exit gates, as depicted in Exhibit A, by August 30, 2014.

### c. **Storm Water Pretreatment**

30.     Defendant Consolidated shall install Grattix boxes as described in Exhibit B at the locations shown in Exhibit A by August 30, 2014. The Grattix boxes shall contain a metals removal agent and shall be directed to an infiltration basin(s).

31.     By September 30, 2014, Defendant Consolidated shall place Filtrexx Envirosoxx for Oil and Hydrocarbon Removal upgradient and proximate to the inlets to the infiltration basins described in paragraphs 25 - 27.

### d. **Canopies and Berms**

32.     Defendant Consolidated shall install Speed Bump Berms as described in Exhibit B at the locations shown in Exhibit A by August 30, 2014.

33.     Defendant Consolidated shall install canopies at the location shown on Exhibit A by September 30, 2014. All such canopies shall be coated metal or equipped with gutters to collect and direct all canopy run-off to downspouts that terminate in Grattix boxes. The canopies shall provide sufficient cover to eliminate all storm water contact with the fueling island at the American Waste Facility. The design standards for these Grattix boxes are described in Exhibit B.

34.     All water collected from the areas that are covered or surrounded by Speed Bump Berms shall be collected and disposed of properly. This water shall not be infiltrated at the American Waste Facility.

### e. **Track-Off Control System**

35.     In Drainage Areas 1 and 2, Defendant Consolidated shall install Cattle Grids for track-off control, as described in Exhibit B, at the locations shown in Exhibit A by August 30, 2014.

### f. **Litter Control**

36.     Defendant Consolidated shall     adopt a Litter Control Log to document

trash control activities at the American Waste Facility within thirty (30) days of the Effective Date. The Litter Control Log shall be part of any and all revised Storm Water Pollution Prevention Plans ("SWPPP") for the American Waste Facility. A blank template for the Litter Control Log is attached hereto as Exhibit C.

37.     Defendant Consolidated shall designate a person responsible for litter control within thirty (30) days of the Effective Date. Beginning on September 1, 2014, this person shall inspect and pick up litter around the perimeter of the American Waste Facility daily and record these activities in the Litter Control Log.

**D.      Sampling at the American Waste Facility**

38.     Defendant Consolidated shall install a recording rain gauge capable of recording rainfall to 0.01 inches at the American Waste Facility within thirty (30) days of the Effective Date. Defendant Consolidated shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance, maintain records of rain data, and provide such rain gauge data to Waterkeeper at the end of each calendar quarter during the Wet Season (October 1 – May 30) for the term of this Consent Decree.

39.     In addition to the requirements of paragraph 38, Defendant Consolidated shall provide the records described in paragraph 38 to Waterkeeper within ten (10) days of any written request by Waterkeeper.

40.     <u>Storm Water Monitoring</u>. By August 30, 2014, Defendant Consolidated shall develop a plan for monitoring all storm water and non-storm water discharges from the American Waste Facility whether or not the 95% Design Storm is exceeded.

**a.  <u>Sample Collection</u>**

41.     During the life of this Consent Decree, Defendant Consolidated shall collect samples of any storm water discharge from the infiltration basins and from industrial areas at the American Waste Facility. For purposes of this Consent Decree, this includes any storm water discharge occurring during the American Waste Facility's operating

hours1 or, for storm water stored onsite prior to discharge, whenever storm water is released, whether during operating hours or not.

42. All samples collected pursuant to paragraph 41 shall be analyzed for the following parameters: total suspended solids, copper, lead, zinc, oil and grease, aluminum, arsenic, cadmium, iron, mercury, nickel, biochemical oxygen demand, silver, chemical oxygen demand, selenium, ammonia, cyanide, magnesium, pH, and fecal coliform.

43. <u>Influent Monitoring</u>. Defendant Consolidated shall collect samples of storm water conveyed to the infiltration basins installed pursuant to paragraphs 25 – 27 immediately prior to the conveyance into the infiltration basins. Samples shall be collected during the first hour of discharge of three storm events of 0.1 inch or greater occurring during the Wet Season at the American Waste Facility. Defendant Consolidated shall analyze all samples collected pursuant to this paragraph for the constituents identified in Table 1 below.

## **b. Sampling Analysis and Reporting**

44. Defendant Consolidated shall use a state certified laboratory to conduct all analysis pursuant to this Consent Decree. If requesting analysis of influent samples, Defendant Consolidated shall select analytical limits such that, at a minimum, the method detection limits are below the Influent Numeric Limits in Table 1. When requesting analysis of storm water discharges other than discharges to the infiltration basins, Defendant Consolidated shall select analytical limits such that, at a minimum, the method detection limits are below EPA Benchmark Levels and applicable water quality standards for storm water.

45. Defendant Consolidated shall request that results of all sample analyses required by this Consent Decree be reported to it within fifteen (15) days of laboratory receipt of the sample.

---

[1] The American Waste Facility's current operating hours are Monday through Friday 4:30am to 5pm, and Saturday 5am to 3pm.

ORDER RE: CONSENT
DECREE AND JUDGMENT

10

Case No. CV14-925-DDP (PLAX)

46.     Defendant Consolidated shall request that results of all sample analyses required by this Consent Decree for metals be reported as total concentration levels.

47.     Defendant Consolidated shall provide the complete laboratory results of all storm water samples collected at the American Waste Facility to Waterkeeper within fifteen (15) days of receiving the results.

48.     Defendant Consolidated shall submit a written report to Waterkeeper no later than June 15 at the end of each Wet Season that contains all rain gauge data for the Wet Season, all storm water samples collected at the American Waste Facility, all analytical results from storm water or influent samples collected at the American Waste Facility, an explanation of any failure to collect and analyze a storm water discharge as required by this Consent Decree or the Storm Water Permit, and an explanation of any failure to collect and analyze influent samples as required by paragraph 43 of this Consent Decree.

49.     Any failure to sample pursuant to the requirements of paragraph 43 of this Consent Decree shall be documented and explained to Waterkeeper by email within five (5) days of the date a sample could have been collected during operating hours but was not.

**E.     Numeric Limits and Action Plan for Exceedances**

50.     <u>Numeric Limits for Influent</u>. Storm water that is routed to an infiltration basin at the American Waste Facility shall not contain contaminants in excess of the limits in Table 1 below ("Influent Numeric Limits") prior to being discharged into the infiltration basin.

///

///

///

///

///

///

**Table 1: Influent Numeric Limits**

| Contaminant | Limit |
|---|---|
| Aluminum | 5.00 mg/L |
| Arsenic | 0.010 mg/L |
| Cadmium | 0.10 mg/L |
| Copper | 1.30 mg/L |
| Lead | 0.10 mg/L |
| Mercury | 0.0024 mg/L |
| Silver | 0.10 mg/L |
| Zinc | 5.00 mg/L |
| Total Petroleum Hydrocarbons | 15 mg/L |

51.    <u>Influent Action Plan for Table 1 Exceedances.</u> Defendant Consolidated shall submit a written plan for reducing and/or eliminating the discharge of pollutants in storm water infiltrated at the American Waste Facility ("Influent Action Plan") when influent sampling during the Wet Season demonstrates that any contaminant specified in Table 1 exceeds the Influent Numeric Limits at the American Waste Facility. The Influent Action Plan shall be specific to the American Waste Facility. The Influent Action Plan for the American Waste Facility must be submitted to Waterkeeper within thirty (30) days of Defendant's receipt of sampling data showing exceedances of Table 1 Influent Numeric Limits.

a.    <u>Influent Action Plan Requirements.</u> Each Influent Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Influent Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating storm water, that shall be implemented to achieve compliance with the Influent Numeric

Limit(s), as well as the design plans and calculations of these additional BMPs,[2] and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than September 30 (prior to the next Wet Season).

       b.  <u>Influent Action Plan Review.</u> Waterkeeper shall have forty-five (45) days upon receipt of Defendant Consolidated's Influent Action Plan to provide Defendant with comments. Within fourteen (14) days from the date Waterkeeper comments on Defendant's Influent Action Plan, Defendant shall provide Waterkeeper with a written explanation if Defendant refuses to integrate any of Waterkeeper's comments into the Influent Action Plan. Any disputes as to the adequacy of the Influent Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

       c.  Defendant Consolidated shall have until September 30 (following the Wet Season in which the exceedances giving rise to the obligation to submit a Influent Action Plan occurred) to implement the Influent Action Plan. Defendant Consolidated shall notify Waterkeeper in writing when the Influent Action Plan has been implemented.

       d.  Defendant Consolidated shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Influent Action Plan. Defendants shall further diligently pursue the procurement of contractors, labor, and materials to complete all such BMPs by the September 30 deadline described in paragraph 51.c above, and shall use their best efforts to meet these deadlines. Defendant's unexcused failure to meet this deadline shall be considered a breach of the Consent Decree.

---

[2] If storm water flows exceed the influent limits in Table 1 for any contaminant(s) that may be removed with Filtrexx Envirosoxx for Heavy Metal Removal, Defendant Consolidated's Influent Action Plan shall require, at a minimum, the implementation of such Filtrexx Envirosoxx upgradient and proximate to the inlet(s) to the infiltration basin(s) that receives the storm water flows that sampling indicates exceeds the influent limits.

**F.     Visual Observations**

52.     During the life of this Consent Decree, Defendant Consolidated shall conduct visual observations during normal scheduled facility operating hours during every rain event that produces a discharge at all discharge points at the American Waste Facility.

53.     Defendant shall record any pollutants, odors, discolorations, or other pollutant indicators observed during these visual observations and compare the results of these observations to the sampling analyses conducted at the same locations. Visual observation records shall be included in any Influent Action Plan required pursuant to the requirements of this Consent Decree.

**G.     Monitoring and Reporting Program Revisions**

54.     By August 30, 2014, or forty-five (45) days after the Effective Date, whichever is earlier, Defendant Consolidated shall revise its Monitoring and Reporting Program ("M&RP") for the American Waste Facility to incorporate all sampling, analysis, observation, and reporting requirements of this Consent Decree and the Storm Water Permit.

55.     Defendant Consolidated shall submit the revised M&RP for the American Waste Facility to Waterkeeper for review and comment. Waterkeeper shall provide comments, if any, to Defendant Consolidated within thirty (30) days of receipt of the M&RP. Defendant Consolidated shall incorporate Waterkeeper's comments into the M&RP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes over the adequacy of the revised M&RP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this paragraph allowing Waterkeeper to review and approve Defendant's M&RP is intended to allow Waterkeeper to seek to modify Defendant Consolidated's obligations to implement and maintain the BMPS described in this Consent Decree or to require Defendant to implement and maintain additional BMPS that have not been negotiated and included     in this Consent Decree, or to otherwise

modify the terms and conditions of this Consent Decree.

**H.    Storm Water Pollution Prevention Plan Revisions**

56.    By August 30, 2014, or forty-five (45) days after the Effective Date, whichever is earlier, Defendant Consolidated shall revise the SWPPP for the American Waste Facility to include all BMPs required by the Consent Decree and comply with all provisions of Section A of the Storm Water Permit.

57.    Defendant Consolidated shall submit the revised SWPPP to Waterkeeper for review and comment. Waterkeeper shall provide comments, if any, to Defendant Consolidated within sixty (60) days of receipt of the SWPPP. Defendant Consolidated shall incorporate Waterkeeper's comments into the SWPPP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Nothing in this paragraph allowing Waterkeeper to review and approve Defendant Consolidated's SWPPP is intended to allow Waterkeeper to seek to modify Defendant Consolidated's obligations to implement and maintain the BMPS described in this Consent Decree or to require Defendant Consolidated to implement and maintain additional BMPS that have not been negotiated and included in this Consent Decree, or to otherwise modify the terms and conditions of this Consent Decree.

58.    <u>Additional SWPPP Revisions</u>. Defendant Consolidated shall revise the SWPPP for the American Waste Facility if there are any changes in the American Waste Facility's operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to Influent Action Plans.

59.    Defendant Consolidated shall submit any revised SWPPP to Waterkeeper for review and comment within ten (10) days of the SWPPP revision. Waterkeeper will provide comments, if any, to Defendant Consolidated within thirty (30) days of receipt of any revised SWPPP. Defendant                    Consolidated shall incorporate

Waterkeeper's comments into any revised SWPPP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

**I.    Employee Training**

60.    Within thirty (30) days of the Effective Date of this Consent Decree, Defendant Consolidated shall develop and implement a training program, including any training materials needed for effective implementation of the training program, to ensure: (i) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree, and (ii) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree ("Training Program"). At a minimum the Training Program shall include at least the following:

a.    <u>Language</u>. Defendant Consolidated shall conduct the Training Program in the language or languages in which all employees participating in the Training Program are fluent.

b.    <u>Non-Stormwater Discharges</u>. Defendant Consolidated shall train all designated employees on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges to ensure compliance with paragraph 22 above.

c.    <u>BMPs</u>. Defendant Consolidated shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the American Waste Facility.

d.    <u>Storm Water Sampling</u>.        Defendant Consolidated shall designate

an adequate number of employees necessary to collect storm water samples from each discharge location as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

e.  <u>Influent Monitoring.</u> Defendant Consolidated shall designate an adequate number of employees necessary to collect samples of influent before it reaches the infiltration basins as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

f.  <u>Visual Observation Training.</u> Defendant Consolidated shall provide training to all designated employees at the American Waste Facility regarding visual observations pursuant to this Consent Decree and the Storm Water Permit.

61.  Training shall be provided by a private consultant or a representative of Defendant Consolidated who is familiar with the requirements of this Consent Decree and the Storm Water Permit. The training shall be repeated annually, or as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the Storm Water Permit, and the American Waste Facility's SWPPP. All new designated staff shall receive this training before assuming responsibilities for implementing the American Waste Facility's SWPPP or M&RP.

62.  Defendant Consolidated shall maintain training records to document compliance with this section, and shall provide Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

**J.  Compliance Monitoring and Reporting**

63.  <u>Waterkeeper Site Inspections.</u> Every year during the life of this Consent Decree, up to three (3) Waterkeeper representatives and/or consultants (including an attorney) may conduct one (1) Wet Season site inspection and one (1) Dry Season (June 1 – September 30) site inspection of the American Waste Facility. The site inspections shall occur during normal business hours. Waterkeeper shall provide Defendant

Consolidated with forty-eight (48) hours notice (weekends and holidays excluded) prior to each Wet Season site inspection, and forty-eight (48) hours notice (weekends and holidays excluded) prior to each Dry Season site inspection. Notice shall be provided by telephone and electronic mail, and shall state the names of all persons that Waterkeeper will bring to the inspection.

64.     During the site inspections, Waterkeeper and/or its representatives shall be allowed access to the American Waste Facility's SWPPP(s), M&RP, and all other monitoring records, reports, and sampling data for the American Waste Facility.

65.     During the site inspections, Waterkeeper and/or its representatives may collect storm water samples at the American Waste Facility.

66.     During the site inspections, Waterkeeper may take photographs or video recording of the American Waste Facility. If Waterkeeper takes any photographs and/or video recording, Waterkeeper shall provide Defendant Consolidated with the photographs and/or video within fourteen (14) days after any written request by Defendant Consolidated for such photographs and/or videos.

67.     <u>Compliance Monitoring and Oversight</u>. Defendants shall pay a total of Two Thousand Nine Hundred Dollars ($2900) to compensate Waterkeeper for costs and fees to be incurred for m Defendants onitoring Defendant's compliance with this Consent Decree. Payment shall be made within five (5) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401. Upon request, Waterkeeper shall provide Defendants with documentation of the fees and costs incurred in connection with compliance monitoring and oversight activities.

68.     <u>Action Plan Payments</u>. Defendants shall pay Three Thousand Five Hundred Dollars ($3,500) each time an Influent Action Plan is submitted to Waterkeeper, except that where the Action Plan proposes the treatment of storm water using a biological or mechanical treatment process (as opposed to, for example, the installation of additional roofing or the use of additional Filtrexx         Envirosoxx or Grattix boxes), then the

1   payment shall be Six Thousand Dollars ($6,000). Payments shall be submitted

2   simultaneously with the submittal of the Influent Action Plan. Payments shall be made

3   payable to "Los Angeles Waterkeeper" and addressed to: Los Angeles Waterkeeper, 120

4   Broadway, Suite 105, Santa Monica, CA 90401. Failure to submit a payment as required

5   under this paragraph will constitute a breach of the Consent Decree.

6       69.    Data Reporting.  During the life of this Consent Decree, Defendant

7   Consolidated shall provide Waterkeeper with a copy of all Consent Decree and Storm

8   Water Permit compliance and monitoring data, including inspection reports, related to the

9   American Waste Facility's coverage under the Storm Water Permit on an annual basis.

10      70.    Document Provision. During the life of this Consent Decree, Defendants

11  shall copy Waterkeeper on all documents related to storm water quality at the American

12  Waste Facility that are submitted to the Regional Board, the State Board, and/or any state

13  or local agency, county, or municipality. Such reports and documents shall be provided to

14  Waterkeeper on the date they are sent to the agencies, counties, and/or municipalities.

15  Any correspondence related to Defendants' compliance with the Storm Water Permit or

16  storm water quality received by Defendants from any regulatory agency, state or local

17  agency, county, or municipality shall be provided to Waterkeeper within ten (10) days of

18  receipt by Defendants.

19  **K.    Environmental Project, Reimbursement of Litigation Fees and Costs, and**

20  **Stipulated Payments**

21      71.    Environmental Project. To remediate the alleged environmental harms

22  resulting from non-compliance with the Storm Water Permit alleged in the Complaint,

23  Defendants agrees to make a payment of Thirty Thousand Dollars ($30,000) to the Rose

24  Foundation to fund environmental project activities that will reduce or mitigate the

25  impacts of storm water pollution from industrial activities on the Southern California

26  Bight and its tributaries. The payments shall be made within three (3) days of the

27  Effective Date payable to "Tim Little, Rose Foundation for Communities and the

28  Environment" and delivered via wire          transfer to: 1970 Broadway, Suite 600,

ORDER RE: CONSENT                    Case No. CV14-925-DDP (PLAX)
DECREE AND JUDGMENT          19

Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of such payment.

72. <u>Reimbursement of Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Thirty-Seven Thousand Dollars ($37,000) to Waterkeeper to partially reimburse Waterkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made within three (3) days of the Effective Date payable to "Los Angeles Waterkeeper" and delivered via wire transfer to: Los Angeles Waterkeeper, 120 Broadway, Suite 105, Santa Monica, CA 90401.

73. <u>Stipulated Payment</u>. Defendants shall make a remediation payment of One Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree, not excused by Force Majeure. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Defendants' alleged discharges and shall be awarded to the Rose Foundation for Communities and the Environment. Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline. The payments shall be mailed via regular mail to the attention of Tim Little, Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612-2218. Defendants shall provide Waterkeeper with a copy of each such payment at the time it is made.

## IV. **DISPUTE RESOLUTION**

74. This Court shall retain jurisdiction over this matter until the final termination date defined in paragraph 9 above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

75. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by          notifying all other Settling Parties in

writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

76.     If the Settling Parties cannot resolve a dispute by the end of meet and confer informal negotiations, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

77.     <u>Enforcement Fees and Costs</u>. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, may be awarded at the Court's discretion to either Party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

**V.     <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>**

78.     <u>Waterkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Waterkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives releases all persons including, without limitation, Defendants (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waives all claims alleged in the Notice Letter and/or Complaint up to the Effective Date of this Consent Decree.

79.     <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their                    successors and assigns, and their agents,

attorneys, and other representatives releases Waterkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) from and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed for matters related to Waterkeeper's Notice Letter and Complaint up to entry of this Consent Decree by the Court.

80.    Upon Court approval and entry of this Consent Decree, Waterkeeper shall dismiss with prejudice Defendant Republic Services of California II, LLC. The Court shall retain jurisdiction over Republic Services, Inc. for the sole purpose of enforcing the guaranty of Republic Services, Inc. of the performance of the obligations of Defendant Consolidated. Republic Services, Inc. in executing this Consent Decree guarantees the performance of all obligations of Defendant Consolidated, including, but not limited to, the payment of any monetary sums required under this Consent Decree.

81.    Nothing in this Consent Decree limits or otherwise affects Waterkeeper's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Defendants' compliance with the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

## VI.  **MISCELLANEOUS PROVISIONS**

82.    <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

83.    <u>Force Majeure</u>. Force Majeure    includes any act of God, war, fire,

earthquake, flood, or natural catastrophe; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from, any governmental agency. Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

a.  If Defendants claim Force Majeure, they shall notify Waterkeeper in writing within twenty-one (21) days of the date that Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and the specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendants to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendants shall adopt all reasonable measures to avoid and minimize such delays.

b.  In the case of governmental permits and approvals required for structural BMPS, Defendants shall diligently file and pursue all required local agency applications for permits for the structural BMPs described in this Consent Decree, and shall diligently pursue the procurement of contractors, labor and materials to complete all such BMPs by the deadlines set forth herein, and shall use their best efforts to meet these deadlines. Defendants shall be excused from meeting the deadlines in this Consent Decree for a specific BMP if circumstances beyond the       reasonable control of Defendant as well as

delays in obtaining any required governmental permits or approvals due to the permitting agency's actions or inactions or delays associated with the fabrication and/or construction of materials and structural BMPs prevent the attainment of the deadline for a specific BMP. Such delays may only be excused if all of the following requirements are met: 1) Defendant has notified Waterkeeper via email, telephone call, and first class mail within ten (10) days of first learning about the anticipated delay; 2) Defendant continues to exercise due diligence and best efforts in pursuing the permitting and implementation of the BMP in question and proposes a reasonable revised deadline; and 3) Defendant meets the revised deadline. Any excused delay shall not excuse Defendants from implementing their other, unexcused obligations under this Consent Decree. The estimated average time for installation of an infiltration basin, cattle grid, and exit trench from the time of receiving the permit is 3-4 weeks from receipt of the permit. The estimated average time for installation of a canopy from the time of receiving the permit is 8-9 weeks from receipt of the permit.

c.   The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible due to Force Majeure, despite the timely good faith efforts of Defendants, new deadlines shall be established.

d.   If Waterkeeper disagrees with Defendants' notice of Force Majeure, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV. In such proceeding, Defendants shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by Force Majeure and the extent of any delay attributable to such circumstances.

84.   <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water      Act, or specifically herein.

ORDER RE: CONSENT
DECREE AND JUDGMENT

24

Case No. CV14-925-DDP (PLAX)

85.     <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

86.     <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

87.     <u>Correspondence</u>. Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail as follows:

<u>If to Plaintiff:</u>

Tatiana Gaur, Staff Attorney
tgaur@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

With copies to:

Liz Crosson, Executive Director
liz@lawaterkeeper.org
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, California 90401

<u>If to Defendants:</u>

Thomas M. Bruen (Bar No. 63324)
tbruen@tbsglaw.com
Law Offices of Thomas M. Bruen, P.C.
1990 N. California Boulevard, Suite 620
Walnut Creek, California 94596

With copies to:

Ron Krall
rkrall@republicservices.com
Area President
12949 Telegraph Road
Sante Fe Springs, California 90670

Tim Benter
tbenter@republicservices.com
Vice President and Deputy General Counsel
Republic Services, Inc.
18500 North Allied Way
Phoenix, Arizona 85054

Notifications of communications shall be deemed submitted three (3) business days after having been set via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

88. <u>Effect of Consent Decree</u>. Except as provided herein, Waterkeeper does not, by its consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

89. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

90. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

91. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

92. <u>Integration Clause</u>. This is an        integrated Consent Decree. This Consent

Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

93.     Authority. The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

94.     The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

95.     The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**IT IS SO ORDERED.**

Date:  October 10, 2014

_____
Honorable Dean D. Pregerson
United States District Judge
Central District of California